943 So.2d 321 (2006)
PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, Petitioner,
v.
Peter R. GENOVESE, M.D., Respondent.
No. 4D06-421.
District Court of Appeal of Florida, Fourth District.
December 13, 2006.
John T. Kolinski and John E. Meagher of Shutts & Bowen LLP, Miami, for petitioner.
Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, and Richard M. Benrubi of Liggio, Benrubi & Williams, P.A., West Palm Beach, for respondent.
Frederick T. Hawkes and Nancy C. Ciampa of Carlton Fields, P.A., Tallahassee, for Amicus Curiae Defense Research Institute, Inc.
Janis Brustares Keyser of Billing, Cochran, Heath, Lyles, Mauro & Anderson, P.A., West Palm Beach, for Amicus Curiae Florida Defense Lawyers Association.
PER CURIAM.
Respondent Genovese brought a statutory first-party bad faith action against Provident Life & Accident Insurance Company, his own insurer, after Provident stopped monthly payments Genovese claimed from his disability income policy. Following commencement of the bad faith suit, Genovese requested production of Provident's entire litigation file, including all correspondence and communications made between the attorneys representing Provident and Provident's agents regarding Genovese's claims for benefits. The trial court issued an order compelling production of the documents. Provident then filed a petition for writ of certiorari, asking this court to quash the trial court order, arguing that Allstate Indemnity Co. v. Ruiz, 899 So.2d 1121 (Fla.2005), did not allow for the discovery of documents protected by the attorney-client privilege nor did it allow discovery of documents protected by a "core" work product privilege.
We deny the petition as to Provident's claim that some documents are protected by a "core" work product privilege. The Florida Supreme Court held in Ruiz that the work product privilege did not protect against discovery of the insurer's *323 file in a statutory first-party bad faith claim. 899 So.2d at 1129-30. The Court did not make a distinction between "core" and "non-core" work product.
However, we grant the petition as to information covered by the attorney-client privilege. Liberty Mut. Fire Ins. Co. v. Bennett, 939 So.2d 1113 (Fla. 4th DCA 2006) (agreeing with XL Specialty Ins. Co. v. Aircraft Holdings, LLC, 929 So.2d 578 (Fla. 1st DCA 2006), rev. granted, 935 So.2d 1219 (Fla.2006), and finding that the attorney-client privilege does apply in statutory first-party bad faith actions). We quash the trial court's order compelling discovery of documents protected by the attorney-client privilege and remand for further proceedings. Additionally, we again certify the same question certified in XL Specialty and Bennett as one of great public importance:
DOES THE FLORIDA SUPREME COURT'S HOLDING IN ALLSTATE INDEMNITY CO. V. RUIZ, 899 So.2d 1121 (Fla.2005), RELATING TO DISCOVERY OF WORK PRODUCT IN FIRST-PARTY BAD FAITH ACTIONS BROUGHT PURSUANT TO SECTION 624.155, FLORIDA STATUTES, ALSO APPLY TO ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS IN THE SAME CIRCUMSTANCES?
GUNTHER and WARNER, JJ., concur.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
Under stare decisis I may be bound to follow Liberty Mutual Fire Insurance Company v. Bennett, 939 So.2d 1113 (Fla. 4th DCA 2006), but that doesn't mean I have to agree with it. And I don't. In my judgment, Judge Polen (and perforce Judge Andrews in the trial court) correctly analyzed the issue. I write to add my own thoughts.
Allstate Indemnity Company v. Ruiz, 899 So.2d 1121 (Fla.2005), changed the legal landscape on discovery in these "bad faith" cases. Although the principal holding did away with the distinctions between first-party and third-party claims, its equally significant holding was to recognize the true nature of the relationship between a liability insurance carrier and its insureds in dealing with a covered claim as non-adversarial.[1] When a covered personal injury claim is brought against an insuredwhether named or omnibus; whether first-party or third-partythe carrier and the lawyer it chooses to defend the suit are bound to represent only the best interest of the insured defendant because they owe fiduciary duties to that insured.[2]
*324 The primary duty of the fiduciary is broadly described as loyalty. Everything the carrier and its chosen lawyer do must be faithful to that duty and designed to further the interests of the insured in both covering and defending against the claim. One aspect subsumed within this duty of loyalty deals with confidentiality. When it is in the best interests of the insured not to disclose to someone outside their relationship communications between the insured and the chosen lawyer, the attorney-client privilege must be asserted. But when anything happens or they learn anything that relates in any way to the claim, these fiduciaries must disclose it to the insured. If the carrier and its chosen lawyer have a duty to disclose everything to the insured, it follows that they cannot possibly have a privilege then or later refuse to disclose it. In Ruiz, the court explained this aspect as it relates to discovery in a later bad faith suit thus:
"In defending personal injury litigation, an insurance company participates not only on behalf of itself, but also on behalf of its insured. Since the plaintiff-judgment creditor stands in the same posture as the insured, entitlement to all materials and documents up to and including the date of judgment, is extended to him. . . . Just as [the named insured] would be entitled to discovery, including deposition and production files by the attorneys, since both [the named insured and the liability carrier] were their clients, [the third-party insured] has the same right of discovery in furtherance of the preparation of his [bad faith] case."
[c.o.] 899 So.2d at 1127. It is simply indisputable that this explanation leaves no room for any privilege to keep from the insured information relating to the handling of the personal injury suit. Given the fiduciary relationship between a liability insurance carrier and the insured, that is the only sensible meaning as regards any claim of privilege about this subject.
Two old cases employing the correct principle regarding such discovery and therefore receiving approval in Ruiz were Stone v. Travelers Insurance Company, 326 So.2d 241 (Fla. 3d DCA 1976), and Boston Old Colony Insurance Company v. Gutierrez, 325 So.2d 416 (Fla. 3d DCA 1976). Together they show why there is no distinction as to the attorney client and work product privileges and that both are unavailable. In Boston Old Colony plaintiff in a third-party bad faith action sought the production of the entire files[3] maintained by the law firms representing the insured and the carrier in the personal injury action. The trial court compelled production of the entire files, and the carrier sought certiorari review, contending "that to compel oral deposition by the attorneys and production of the files will cause a breach of the lawyer-client privilege of confidentiality." 325 So.2d at 417. It should be perceived that the argument against production was identical to that in *325 the case we face today: the attorney-client privilege in favor of the carrier barred its insured from production (and related deposition) of everything in the files of the law firm up to the date of disposition in the underlying personal injury action. In rejecting the attorney-client privilege, the Boston Old Colony court said:
"As a third party beneficiary of the insurance policy, Gutierrez stands in the same posture as that of Brown, the insured. Just as Brown would be entitled to discovery, including deposition and production of files by the attorneys, since both he (Brown) and Boston Old Colony were their clients, Gutierrez has the same right of discovery in furtherance of the preparation of his case."
325 So.2d at 417. Then in Stone, where privilege was asserted in the connection with bad faith discovery, "Travelers contend[ed] that the documents are work product and thus privileged, but concedes that the matters are not subject to any other privilege." [e.s.] 326 So.2d at 242. Stone held that the same materials could not be protected by the work product privilege either. Both Boston Old Colony and Stone were approved by Ruiz. In short the very thing we have just held in Liberty Mutual was rejected as long ago as Boston Old Colony, a rejection that was in turn approved by the supreme court in Ruiz.
Liberty Mutual simply misreads the meaning and effect of Ruiz by overlooking the history behind it. Because Liberty Mutual is in conflict with Ruiz I would certify the conflict to the supreme court. I would not pose a question of great public importance as proposed in Liberty Mutual because I do not think there is any ambiguity in the holding in Ruiz. It is clear by its very terms that Ruiz applies to all privileges claimed by the carrier as to materials and communications about the underlying personal injury claim up to its disposition.
NOTES
[1] "[T]he rule permitting discovery of materials contained in claim type files in third-party bad faith actions has not been consistently applied in first-party bad faith actions. It appears that this inconsistency has resulted from and been engendered by a misdescription of the nature of the parties' relationship in first-party actions as being totally adversarial, an outdated pre-statutory analysis, as opposed to applying the responsibilities that have traditionally flowed in the third-party context, which are now codified for first-party actions." [e.s.] Ruiz, 899 So.2d at 1127.
[2] "Under liability policies . . . insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers; insurers had the power to settle and foreclose an insured's exposure or to refuse to settle and leave the insured exposed to liability in excess of policy limits. This placed insurers in a fiduciary relationship with their insureds similar to that which exists between an attorney and client." [c.o.] 899 So.2d at 1125. The court went on to explain that section 624.155, Florida Statutes, "essentially extended the duty of an insurer to act in good faith and deal fairly in those instances where an insured seeks first-party coverage or benefits under a policy of insurance." 899 So.2d at 1126.
[3] I use the term entire files because there is no longer any basis to separate the claim file and the litigation file of the carrier or its chosen attorney. There is no privilege as to either one for the contents of the underlying personal injury lawsuit through its disposition. Ruiz, 899 So.2d at 1129-30 ("we hold that in connection with evaluating the obligation to process claims in good faith under section 624.155, all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced in a first-party bad faith action").