975 So.2d 461 (2007)
PROGRESSIVE EXPRESS INSURANCE COMPANY, Petitioner,
v.
Laraine SCOMA, as Personal Representative of the Estate of Jessica Paige Barnett, Respondent.
No. 2D06-2294.
District Court of Appeal of Florida, Second District.
May 4, 2007.
Rehearing Denied June 25, 2007.
*463 Terence R. Perkins of Smith, Hood, Perkins, Loucks, Stout, Bigman, Lane & Brock, P.A., Daytona Beach; and Daniel P. Mitchell of Gray Robinson, P.A., Tampa, for Petitioner.
Kathryn E. Lee and Shea T. Moxon of Swope, Rodante, P.A., Tampa, for Respondent.
ALTENBERND, Judge.
Progressive Express Insurance Company (Progressive) seeks certiorari review of a pretrial discovery order entered in an action alleging bad faith. The action was filed by Laraine Scoma, as personal representative of the estate of Jessica Paige Barnett. Ms. Scoma was the plaintiff in the original tort action against Progressive's insured, Shannon Courtney. To the extent that the trial court has ordered Progressive to produce documents without an adequate consideration of the attorney-client privilege possessed by Progressive or its insured, we grant the writ. See Provident Life & Accident Ins. Co. v. Genovese, 943 So.2d 321 (Fla. 4th DCA 2006) (granting relief by certiorari under similar circumstances).

BACKGROUND
On March 27, 2000, Mr. Courtney was involved in an accident that resulted in the death of Jessica Paige Barnett. At the time, he had a policy of automobile liability insurance with Progressive that provided $10,000 in coverage for such an accident. Ms. Scoma, as the personal representative of Ms. Barnett's estate, made a claim with Progressive alleging that Mr. Courtney was responsible for the accident and the wrongful death of Ms. Barnett. When settlement negotiations between the parties were unsuccessful,[1] Ms. Scoma filed suit against Mr. Courtney.
Mr. Courtney was represented in the underlying tort action by Terence R. Perkins. Our file indicates that criminal proceedings brought against Mr. Courtney as a result of this accident may have resulted in his incarceration. It does not appear that Mr. Perkins represented him in those proceedings. Ultimately, Ms. Scoma received a verdict against Mr. Courtney in the amount of $1,050,000. That verdict was reduced to judgment in December 2004. Mr. Courtney apparently did not appeal that judgment.
Mr. Courtney did not pursue any action against Progressive related to the manner in which it handled this claim. Instead, Mr. Courtney filed a bankruptcy petition. Neither Mr. Courtney nor his bankruptcy trustee have formally assigned any claim Mr. Courtney might have against Progressive for the handling of Ms. Scoma's claim to anyone.
Nevertheless, Ms. Scoma, as a third-party beneficiary to the insurance contract, filed suit against Progressive, claiming that Progressive acted in bad faith in failing to settle her claim against Mr. *464 Courtney. She asserted that she "stands in the shoes" of Mr. Courtney as a matter of law to pursue the amount of judgment exceeding Mr. Courtney's policy limits.[2] Mr. Perkins, who represented Mr. Courtney in the underlying action, now represents Progressive in this bad faith action. He is also co-counsel for Progressive in this proceeding for writ of certiorari.
As part of the discovery process, Ms. Scoma sought discovery of all documents in the possession of Progressive related to the initial claim. Ms. Scoma argued that because she "stands in the shoes" of Mr. Courtney in this bad faith action against Progressive, the attorney-client privilege did not apply to any confidential communications between Mr. Courtney, Progressive, and their respective counsel in the underlying tort litigation. Her broad request included all written communications between Progressive and Mr. Courtney or their respective agents. Progressive objected to this request on grounds of work-product and attorney-client privilege, as well as on issues of relevancy. Progressive prepared extensive privilege logs, identifying many documents but obviously not explaining their precise content. It is clear that some of these documents are correspondence between Mr. Courtney and his attorney. It is more difficult to determine whether some of the attorney-client privilege documents relate to communications between Progressive and its separate lawyers.
The trial court conducted a hearing on the requests and Progressive's objections to them. Relying on the Fifth District's decision in Dunn v. National Security Fire & Casualty Co., 631 So.2d 1103 (Fla. 5th DCA 1993), and the Third District's decision in Continental Casualty Co. v. Aqua Jet Filter Systems, Inc., 620 So.2d 1141 (Fla. 3d DCA 1993), the trial court concluded that as a matter of law the attorney-client privilege did not apply to protect confidential communications made by Progressive and Mr. Courtney with their counsel during the underlying tort suit from discovery by Ms. Scoma in her bad faith suit. The trial court thus declined to conduct an in camera inspection of the documents and ordered the documents produced without respect to claims of attorney-client privilege.[3] Progressive then filed this certiorari proceeding, seeking to quash the trial court's order.

THE HOLDING IN THIS CASE
There are two separate claims of attorney-client privilege at issue. First, Progressive seeks to protect its confidential communications with its counsel regarding Ms. Scoma's wrongful death suit. Second, Progressive seeks to protect Mr. Courtney's confidential communications with the attorney who represented him in the *465 wrongful death suit. From our limited record, it appears that there is only one attorney who may have had confidential communications with both Progressive and Mr. Courtney  Mr. Perkins. It is at least possible, however, that Progressive may have had individual counsel at some point during the wrongful death proceedings and may have had confidential communications with that counsel.
We conclude that any communications between Progressive and its personal counsel are clearly protected by the attorney-client privilege. Moreover, we conclude that although Ms. Scoma may "stand in the shoes" of Mr. Courtney for the purposes of standing to bring a bad faith action, that position does not permit her access to otherwise privileged communications between Mr. Courtney and his counsel in the wrongful death action, at least in the absence of a waiver of the privilege by Mr. Courtney or his written assignment of the bad faith claim. A person does not waive or otherwise lose an attorney-client privilege merely because a third party is authorized to file a lawsuit against the person's insurance company.
THE ANALYSIS OF ATTORNEY-CLIENT PRIVILEGE MAY VARY BASED UPON THE TYPE OF BAD FAITH CLAIM
Many jurisdictions recognize a "bad faith" cause of action by an insured against his or her insurance company. In this state, such an action was recognized at common law, see Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, So. 852 (1938), and is now also expressly permitted by section 624.155(1)(b)(1), Florida Statutes (2000). In the simplest circumstance, the insured who has paid a premium for insurance coverage and is in privity with the insurance company sues the insurance company alleging that the insurer's failure to handle a claim in good faith has proximately caused damage to the insured. These extra-contractual damages most commonly arise from the failure to settle a claim for an amount within the available insurance coverage when a reasonable insurer would have done so.
In Florida, a bad faith action against an insurance company may be brought not only by the insured to whom the duty of good faith was owed or his or her formal assignee, but also by a third party whose claim against the insurance policy was the subject of alleged bad faith. This cause of action is permitted both by case law and by section 624.155(1)(b)(1). See Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla.1971); see also Macola v. Gov't Employees Ins. Co., 953 So.2d 451 (Fla.2006); Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1125 (Fla.2005).[4] Thus, Ms. Scoma is authorized to bring a bad faith action against Progressive for its alleged breach of its duties to Mr. Courtney even if he is unwilling to cooperate and provide her with an assignment.
The terminology used to differentiate among types of bad faith claims can be quite confusing. Insurance policies tend to provide coverage for the direct benefit of the insured and separate coverage protecting the insured from liability to third parties. Thus, in a typical automobile liability insurance policy, the personal injury protection coverage required to satisfy section 627.736, Florida Statutes (2000), and *466 the uninsured motorist coverage provided to comply with section 627.727, are coverage for the direct benefit of the insured and are often referred to as "first-party coverage." The liability coverage that protects the insured from claims or lawsuits filed by other parties and requires the insurance company to provide the defense for such claims is often referred to as "third-party coverage."
The typical bad faith action recognized at common law and in the earlier cases involved a breach of duty arising from the "third-party coverage." Shaw, 134 Fla. 815, 184 So. 852. However, as the law expanded, insureds obtained the right to sue for monetary awards beyond the coverage of the insurance policy for damage resulting from a breach of the duty relating to "first-party coverage." See § 624.155; Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987).
Confusion arises because, after the holding in Thompson, 250 So.2d 259, a common law bad faith action could be filed either by the insured or by the original plaintiff in the tort action. Thus, a bad faith claim under the "third-party coverage" could be maintained either by the "first party," i.e., the insured, or by the "third party," i.e., the original plaintiff in the tort action.
In Ruiz, 899 So.2d at 1125, the Florida Supreme Court used the term "third-party claim" to refer to an action brought by any person alleging that the insurer acted in bad faith concerning a claim arising under third-party coverage. It used "first-party claim" to refer to an action arising under first-party coverage. In Ruiz, the facts involved a "first-party claim" filed by the "first party," i.e., the insured. Ruiz focused on issues relating to the work-product privilege in such a case.
Thus, while a "first-party claim" for bad faith is generally, if not exclusively, brought by the first party, i.e., the insured, a "third-party claim" as described in Ruiz may be filed either by a "first party" or a "third party." For purposes of the attorney-client privilege, however, there is a significant difference between a "first party's third-party claim" and a "third party's third-party claim." This arises out of the unique relationships created by the insurance contract.
The attorney-client privilege is codified in section 90.502(2), Florida Statutes (2000), which states: "A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." This privilege has been described as "absolute," see XL Specialty Ins. Co. v. Aircraft Holdings, LLC, 929 So.2d 578, 583 (Fla. 1st DCA 2006), although it is subject to certain exceptions set forth in section 90.502(5) and not at issue here.
When an insured brings a bad faith action against his or her insurance company, following the unsuccessful defense of a tort lawsuit, the attorney-client privilege requires special analysis. Under those circumstances, the same attorney may often ethically represent both the insured and the insurer in the tort action. See R. Regulating Fla. Bar 4-1.7(e). That is, the insured and insurer's interests may be aligned, or at least may not be adverse. In many tort actions, then, the lawyer for the named defendant is also the lawyer for the defendant's insurance company, even though the insurance company is not a party to the lawsuit. The attorney-client privilege does not generally attach as to communications between an insurer, the insured, and the attorney hired to represent the insured in a third-party claim *467 because these parties agreed to a representation of common interests. See § 90.502(4)(e). Each of these parties is thus unable to claim the privilege as against one of the other parties. Because no privilege attaches, if the insured "first party" sues the insurance company for a breach of the requirement to provide third-party benefits, the insured has available to him all of the communications between himself and the insurance company and the lawyer representing them. However, if the insured or the insurance company retained separate attorneys to represent only that party's specific interests, they should each be able to preserve their respective attorney-client privilege as to their communications with their own lawyers.
On the other hand, the confidential communications between the insured, the insurer, and any counsel representing them regarding the matter of common interest are protected by the attorney-client privilege from discovery by third parties. See Visual Scene, Inc. v. Pilkington Bros., PLC, 508 So.2d 437 (Fla. 3d DCA 1987). The third party will not have had access to such communications during the underlying tort litigation. The third party bringing a bad faith claim, therefore, is in a much different position than the first-party insured bringing such a claim. The first-party insured and the insurer may have no confidential communications with their joint counsel to protect when the first-party insured brings a claim against the insurer for third-party coverage. When a third party brings the claim for such coverage, however, the insured and insurer most certainly will have had such privileged communications and those communications will have been previously protected from disclosure.

PROGRESSIVE'S CLAIM OF ATTORNEY-CLIENT PRIVILEGE
Progressive's claim of attorney-client privilege could arise either from communications with the attorney hired in the original tort action to defend both Mr. Courtney and Progressive, or from communications with a separate attorney hired to represent only Progressive. From the privilege log, it is clear that Progressive is attempting to claim a privilege as to communications that it received from Mr. Perkins during the original lawsuit. It is less clear whether other communications may have been received from a separate attorney that represented only Progressive.
At least three courts have held that the insurance company's attorney-client privilege with counsel it hires or retains to represent its interest is not waived or abrogated in a bad faith action brought by the insured. XL Specialty Ins. Co., 929 So.2d 578, review granted, 935 So.2d 1219 (Fla.2006); Liberty Mut. Fire Ins. Co. v. Bennett, 939 So.2d 1113 (Fla. 4th DCA 2006); Liberty Mut. Fire Ins. Co. v. Kaufman, 885 So.2d 905 (Fla. 3d DCA 2004). We agree with the reasoning of these cases. If an insured pursuing a bad faith claim against the insurer is unable to obtain access to confidential communications between the insurer and its separate counsel, it should be even more obvious that the insurer's attorney-client privilege exists and is not waived when the bad faith action is brought by a third party that is not in privity with the insurance company and has never been jointly represented. As such, to the extent the order on review appears to permit discovery of Progressive's privileged communications with its individual counsel, the order departs from the essential requirements of the law and must be quashed.
*468 Progressive's claim of attorney-client privilege for its communications with Mr. Perkins or another lawyer in his law firm is somewhat more complex. It depends first on a determination as to whether those communications were made when Mr. Perkins was representing both Mr. Courtney and Progressive on a matter of common interest, such that Progressive could rely upon the communications as confidential. At this point, the record strongly suggests that Mr. Perkins jointly represented both Mr. Courtney and Progressive in the underlying tort action. Although Progressive presumably could not maintain a privilege to its communications with Mr. Perkins in an action filed by Mr. Courtney against the company, nothing in section 90.502 would suggest that Progressive loses the statutory privilege merely because Ms. Scoma filed this lawsuit.
Progressive's ability to claim the privilege regarding these communications may hinge upon the ability of Mr. Courtney to claim the same privilege regarding the communications. Specifically, Ms. Scoma asserts that she "stands in the shoes" of Mr. Courtney such that she has access to his confidential communications with Mr. Perkins. If this is true, Progressive would not be able to protect the confidentiality of those communications. That is, if Progressive had no privilege as to Mr. Courtney, it would have no privilege as to Ms. Scoma. We therefore turn to the issue of whether Ms. Scoma has access to all confidential communications between Mr. Courtney and Mr. Perkins regarding the underlying tort suit.

THE CLAIM OF ATTORNEY-CLIENT PRIVILEGE FOR MR. COURTNEY
Ms. Scoma argued, and the trial court agreed, that no attorney-client privilege applied in this case based upon the Fifth District's decision in Dunn, 631 So.2d 1103, and the Third District's decision in Aqua Jet Filter Systems, 620 So.2d 1141. Both of those decisions relied on the Third District's decisions in Boston Old Colony Insurance Co. v. Gutierrez, 325 So.2d 416 (Fla. 3d DCA 1976).
In Boston Old Colony, the issue was whether the defense attorney in the underlying tort litigation could be deposed and required to produce his file in a subsequent bad faith action brought by the injured party without an assignment from the insured. The Third District declined to issue a writ of certiorari to block that deposition. The entirety of the analysis in the case was:
It is well established that a third person can enforce a contract entered into between others for his benefit. As a third party beneficiary of the insurance policy, Gutierrez stands in the same posture as that of Brown, the insured. Just as Brown would be entitled to discovery, including deposition and production of files by the attorneys, since both he (Brown) and Boston Old Colony were their clients, Gutierrez has the same right of discovery in furtherance of the preparation of his case.
Id. at 417 (citation omitted); see also Stone v. Travelers Ins. Co., 326 So.2d 241 (Fla. 3d DCA 1976) (noting that insurance company involved in bad faith lawsuit brought by third-party judgment creditor "concede[d]" that the contents of its personal injury case file "[were] not subject" to any privilege other than possibly work product privilege, citing Boston Old Colony). Judge Pearson, however, concurred specially in Boston Old Colony, stating, "I do not feel that the question of privilege is reached in this matter. There is no doubt that the lawyers must appear and that they may be examined. The extent of that *469 examination is, I think, an open question." Boston Old Colony, 325 So.2d at 417.
Neither Boston Old Colony nor Stone contain a careful analysis of the attorney-client privilege. This is understandable because the statutory lawyer-client privilege, section 90.502, was not created until July 1992. See ch. 92-138, Laws of Fla. Thus, it did not apply when Boston Old Colony and Stone were decided.
Dunn, 631 So.2d 1103, and Aqua Jet Filter Systems, 620 So.2d 1141, were decided in 1993. Neither case discussed whether section 90.502 applied to the case or what effect the statute might have had on the case. In both cases, the courts interpreted Boston Old Colony and Stone as holding that all materials in the insurance company's claim file up to the date of the judgment in the underlying tort suit are obtainable and should be produced when sought for discovery in a bad faith suit brought by an injured third party against the insurance company. Dunn, 631 So.2d at 1109; Aqua Jet Filter Sys., 620 So.2d at 1141-42. Dunn specifically stated that this result was merited "because the injured party `stands in the shoes' of the insured party in a third party bad faith case." 631 So.2d at 1109.
All of these cases are influenced by the decision in Thompson, 250 So.2d 259, in which Justice McCain explained that the plaintiff in the underlying tort suit could bring a bad faith action as a third-party beneficiary to the insurance contract based on the reasoning in Shingleton v. Bussey, 223 So.2d 713 (Fla.1969) (holding that a person injured by the insured while operating a motor vehicle is entitled to maintain a cause of action directly against the liability insurer). Although the ability of a third party to bring a bad faith claim against the insurer after the conclusion of the underlying tort litigation has survived, the third-party beneficiary analysis in Shingleton was expressly overridden by the legislature in section 627.7262, Florida Statutes (1977),[5] when it prevented the joinder of insurance companies in tort lawsuits. See Auto-Owners Ins. Co. v. St. Paul Fire & Marine Ins. Co., 547 So.2d 148, 149 n. 1 (Fla. 2d DCA 1989).
More important, however, the fact that a plaintiff in the original action may be a third-party beneficiary to an insurance contract or have independent statutory rights under section 627.155 to bring a claim based upon that contract does not support an argument that the plaintiff obtains the defendant's statutory rights under section 90.502. Section 90.502(2) creates a lawyer-client privilege that is possessed by the client. In addition to the client, the privilege may be "claimed" by "a successor" or "assignee." § 90.502(3)(d). Ms. Scoma has no assignment from Mr. Courtney nor is it clear she is "claiming" a privilege rather than seeking to eradicate one. Ms. Scoma has heretofore been a direct adversary of Mr. Courtney in the underlying tort suit and quite possibly has participated in criminal proceedings against him.
Few evidentiary privileges are as jealously guarded as the attorney-client privilege. Permitting a third party who brings a bad faith claim to abrogate the attorney-client privilege previously held by the insured and insurer would seem to undermine the policy reasons for having such a privilege, such as encouraging open and unguarded discussions between counsel and client as they prepare for litigation. We agree with Judge Polston's reasoning in XL Specialty Insurance Co., 929 So.2d at 584-86, that the specific language in section 90.502 controls over any general language in section 627.155. The statute *470 gives both Mr. Courtney and Progressive a privilege that is clear and unambiguous and that neither has waived in this case. The trial court departed from the essential requirements of the law when it held that the statutory privilege did not apply. We therefore grant the petition for writ of certiorari and quash the order on review.
On remand, the court must apply section 90.502 and the case law interpreting it to determine whether the documents which Progressive seeks to protect from disclosure are indeed ones protected by the attorney-client privilege. This will no doubt require an in camera inspection and an analysis as to whether the documents contain confidential communications and whether documents between Progressive, Mr. Courtney, and Mr. Perkins were a result of representation of a common interest.
Petition for writ of certiorari granted and order on review quashed.
VILLANTI, J., and HAYES, HUGH D., Associate Judge, Concur.
NOTES
[1] Our record contains very little information about the presuit settlement negotiations or the underlying lawsuit.
[2] There is at least some indication in our record that the bankruptcy trustee has also asserted that he "stands in the shoes" of Mr. Courtney to pursue a bad faith claim against Progressive for the benefit of the bankruptcy estate. The attorney for the bankruptcy trustee has attended hearings in this bad faith action and has been served with some of the filings, but the trustee has never formally appeared as a party in the action or in this certiorari proceeding. Whether both the bankruptcy trustee and the original plaintiff may wear Mr. Courtney's shoes and pursue the same bad faith claim is not a matter that we need to decide. Further, we need not consider whether the application of the attorney-client privilege would be analyzed differently within the bankruptcy proceeding or whether the trustee has any power to waive part or all of Mr. Courtney's privilege.
[3] Although Progressive also objected before the trial court to the production of the documents based upon claims of work-product privilege, Progressive has not sought to argue the application of that privilege in this certiorari proceeding.
[4] Apparently, Florida is in the minority in permitting the original plaintiff in the tort action to pursue a bad faith claim against an insurance company without a formal assignment of claim from the insured. See, e.g., Knotts v. Zurich Ins. Co., 197 S.W.3d 512, 525-26 (Ky.2006) (Cooper, J., dissenting) (arguing that the "overwhelming majority" of jurisdictions prohibit such third-party bad faith actions).
[5] Currently codified at section 627.4136(2), Florida Statutes (2006).