**Angela MAHARAJ, as Natural Parent and Guardian of Kameran Maharaj, a minor, Plaintiff**

v.

**GEICO CASUALTY COMPANY, Defendant.**

No. 12–80582–Civ.

United States District Court, S.D. Florida.

Jan. 30, 2013.

Richard Mark Benrubi, Liggio Benrubi & Williams, West Palm Beach, FL, for Plaintiff.

Megan Marie Hall, Michael Todd Bill, Young Bill Fugett & Roumbos, Jordan Marshall Thompson, Katina M. Hardee, B. Richard Young, Young, Bill, Roumbos & Boles, P.A., Pensacola, FL, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (DE 15)

WILLIAM MATTHEWMAN, United States Magistrate Judge.

THIS CAUSE is before the Court upon the Motion to Compel Production of Documents (DE 15) filed by Plaintiff, Angela Maharaj ("Plaintiff"). This matter was referred to the undersigned by United States District Judge Kenneth A. Marra upon an Order referring all discovery to the undersigned for final disposition. *See* DE 6. Defendant, GEICO Casualty Company ("GEICO"), responded to Plaintiff's motion (DE 17), and Plaintiff filed a reply (DE 20). Additionally, both parties have filed supplemental memoranda of law as requested by the Court. *See* DEs 24, 25. The motion is now ripe for this Court's review.

### BACKGROUND

Plaintiff filed a lawsuit against GEICO alleging bad faith in the Circuit Court of the 15th Judicial Circuit, in and for Palm Beach County, Florida. (DE 1). The bad faith action was removed to this Court based on diversity jurisdiction. *Id.* In the Complaint, Plaintiff alleges that, on May 17, 2007, Junie Telfort caused severe and permanent injuries to Kameran Maharaj and his father, Surendra Maharaj. Compl. ¶ 4. GEICO, who insured Ms. Telfort, was promptly notified of the lawsuit and the injuries involved. *Id.* at ¶ 8. On June 5, 2007, Kenneth Metnick, Esq., Plaintiff's attorney, demanded that GEICO tender its bodily injury liability policy limits in settlement of the claim within thirty days. *Id.* at ¶ 10. On June 8, 2007, GEICO provided Mr. Metnick with a check in the amount $10,000.00, payable to Surendra Maharaj and Plaintiff individually and as husband and wife, and a check in the amount of $10,000.00,

payable to Surendra Maharaj and Plaintiff as parents and legal guardians of Kameran Maharaj. *Id.* at ¶ 11. The two $10,000.00 checks represented the full policy limits for bodily injury. *Id.* However, GEICO explained that Plaintiff was required to sign a release that included an indemnification clause and a property damage clause before accepting the settlement amount on behalf of Kameran Maharaj. *Id.* at ¶ 13.

According to the allegations in the Complaint, Plaintiff's counsel, Mr. Metnick, in correspondence to GEICO, rejected the indemnity and property damage provisions and requested that GEICO send a new release without the indemnification and property damage clauses. *Id.* at ¶ 14. After some correspondence back and forth between the two parties and GEICO's refusal to strike the indemnification clause from the release, Plaintiff filed a lawsuit against Junie Telfort in Palm Beach Circuit Court on behalf of her son. *Id.* at ¶¶ 15–17. More than eight months later, GEICO served a $10,000.00 proposal of settlement that was conditioned upon Plaintiff executing a release that eliminated the indemnification clause from the release but required Plaintiff to release anyone vicariously liable for Ms. Telfort's negligence. *Id.* at ¶¶ 18–20. Plaintiff ultimately won a jury trial, and a judgment was entered in her favor in the amount of $6,800,626.90. *Id.* at ¶¶ 21–22; DE 1, Ex. A.

### DISCOVERY MOTION

A discovery dispute has now arisen in the pending case. On November 16, 2012, the undersigned held a discovery hearing in an attempt to resolve the discovery issues. Thereafter, an Order was issued requiring the parties to confer in a good faith effort to resolve the outstanding discovery issues. (DE 12). The Order also laid out a briefing schedule. *Id.* In response to that Order, Plaintiff filed the subject Motion to Compel Production of Documents, which seeks that the Court compel production of (a) GEICO's entire file regarding the underlying claim and lawsuit up to the date of the final judgment, and (b) the personnel and/or training

files, including any and all personnel evaluations, for specific GEICO adjusters and claim representatives for a three-year period. *See* DE 15. In her motion, Plaintiff offers to further limit the requested personnel files to those of particular adjusters who had more than incidental or minimal [1] involvement with adjusting Maharaj's claim. *Id.*

With regard to the materials in the claims file, Maharaj argues that the primary case relied on by GEICO, *Progressive Express Ins. Co. v. Scoma*, 975 So.2d 461 (Fla.Dist.Ct. App.2007), in support of GEICO's assertion of the attorney-client privilege, is actually an aberration. Maharaj instead relies on *Baxley v. Geico General Ins. Co.*, No. 5:09cv343/RS/MD, 2010 WL 1780796 (N.D.Fla. May 4, 2010). *Id.* Maharaj asserts that a third-party beneficiary is entitled to discover all of the insurer's claims file through the date of the underlying judgment; the attorney-client privilege does not apply. *Id.* GEICO argues that discovery of an insurer's claim file materials is not unlimited in scope, but rather Florida case law only permits limited discovery of claim file materials dated on or before the date of the underlying final judgment and does not permit discovery of communications protected under the attorney-client privilege, regardless of the date of the documents. (DE 17). GEICO relies primarily on *Scoma* and contends that *Baxley* is legally incorrect and not binding on the Court. *Id.*

GEICO further argues in response to the motion to compel that the requested personnel files are irrelevant to the current lawsuit, are confidential materials protected from disclosure by Florida law, and are protected by the work product privilege. *See* DE 17.

### DISCUSSION

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed.R.Civ.P. 37. Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain "discovery regarding any non-

---

1. The Court uses the two standards of "minimal involvement" and "incidental involvement" interchangeably in this Order as the parties and different courts have utilized both standards.

privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26. Pursuant to the rule, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* While the scope of discovery is broad, it is not without limits. *Washington v. Brown & Williamson Tobacco*, 959 F.2d 1566, 1570 (11th Cir.1992). Courts have long held that "[d]iscovery should be tailored to the issues involved in the particular case." *Id.* (citing *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J.1985)).

### A. CLAIM FILE

Plaintiff is seeking GEICO's entire claim file "regarding the underlying claim and lawsuit up to the date of the Final Judgment on Jury Verdict, February 22, 2012." *See* DE 15. Upon review of GEICO's Supplemental Privilege Log, it appears that all of the documents responsive to Plaintiff's request that GEICO is withholding are being withheld on attorney-client privilege grounds. *See* DE 15–3. The correspondence withheld is mostly between the insurer and the law firm representing the insured in the underlying action and is occasionally between the insured and the law firm representing her. *Id.*

State law provides the rule of decision in diversity actions where a party asserts the attorney-client privilege. *See, e.g., 1550 Brickell Assoc. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D.Fla.2008). Under Florida law, an attorney's client is permitted "to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." § 95.502, Fla. Stat. (2011). The confidentiality of attorney-client privileged communications "is an interest traditionally deemed worthy of maximum legal protection." *State Farm Fla. Ins. Co. v. Puig*, 62 So.3d 23, 27 (Fla.Dist.Ct.App.2011).

The Florida Supreme Court in *Genovese v. Provident Life & Accident Ins. Co.*, 74 So.3d 1064 (Fla.2011), held that attorney-client privileged communications are not discoverable in first-party bad faith actions. The instant case is a third-party bad faith action. In their supplemental memoranda, the parties disagree as to whether the *Genovese* decision applies in the third-party bad faith context as well. As there is no dispute that the case at hand is a third-party bad faith case, this Court must determine whether the legal analysis in *Genovese* should apply to the facts of this case.

The seminal Florida Supreme Court case regarding production of the claim file in bad faith actions is *Allstate Indemnity Co. v. Ruiz*, 899 So.2d 1121 (Fla.2005), which primarily held that

> all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage benefits, liability, or damages, should also be produced in a first-party bad faith action. Further, all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection.

*Id.* at 1129–1130. The privilege at issue in *Ruiz* was the work product privilege and not the attorney-client privilege.

The *Ruiz* decision, however, not only vitiated the work product privilege as it pertains to certain claim file materials in first-party bad faith cases, but it also seemingly eliminated the distinction between first-party and third-party bad faith claims. *Id.* at 1126. The Florida Supreme Court in *Ruiz* explained that the enactment of section 624.155, Florida Statute "ushered out the distinction between first- and third-party statutory claims for the purposes of initiating bad faith actions" and noted that "some court decisions have continued to draw inappropriate distinctions in defining the parameters of discovery in those bad faith actions." *Id.* The Court stated that "any distinction between first- and third-party bad faith actions with regard to discovery purposes is unjustified and without support under section 624.155 and creates an overly formalistic distinction between

substantively identical claims." *Id.* at 1128. The Court also emphasized that "[t]here simply is no basis upon which to distinguish between first- and third-party cases with regard to the rationale of the discoverability of the claim file type material." *Id.* at 1129. Based on this language, the Florida Supreme Court veered away from past case law distinguishing between first- and third-party bad faith actions; the Court's language is so broad that it seems to apply not only to the work product privilege, but also to all privileges invoked during the discovery process.

In *Genovese*, 74 So.3d 1064, the Florida Supreme Court held that the attorney-client privilege remains intact with regard to claim file materials in first-party bad faith cases. The Court distinguished the rationale behind the work product privilege from the rationale behind the attorney-client privilege. *Id.* at 1068. The Court then explained that the attorney-client privilege is intended to encourage open and honest communication between the attorney and client and that "[t]his significant goal of the privilege would be severely hampered if an insurer were aware that its communications with its attorney, which were not intended to be disclosed, could be revealed upon request by the insured." *Id.*

■ Based on the Florida Supreme Court's language in *Ruiz* and the rationale in *Genovese*, this Court determines that the holding in *Genovese*, which protects attorney-client privileged documents in an insurer's claim file in a first-party bad faith action, should be equally applicable in a third-party bad faith action. The Court is cognizant of the fact that the express language of *Genovese* limits its holding to the first-party bad faith context, but the Court sees no reason why the legal analysis utilized in *Genovese* regarding the application of the attorney-client privilege to the insurer's claims file would not be equally relevant in a third-party bad faith case. In fact, it would seem incongruous to uphold the attorney-client privilege in a first-party bad faith action and eviscerate it in a third-party bad faith action. The Florida Supreme Court itself diminished, if not eliminated, the distinction for discovery purposes between the two types of cases in *Ruiz*.

Additionally, in Justice Pariente's specially concurring opinion in *Genovese*, in which Justices Lewis, Labarga, and Perry concurred, she cited the following language from the *Ruiz* opinion:

> The insurers' duties set forth in section 624.155 to act "fairly and honestly toward [their] insured and with due regard for her or his interests" imposes a statutory obligation in first-party claims that is identical to the common law duty of good faith imposed on insurers in third-party claims. This was the essence of our holding in *Allstate Indemnity Co. v. Ruiz*, 899 So.2d 1121 (Fla.2005), which recognized the critical role that discovery of the claims file played in bad faith claims and held that there should not be "artificial and disparate discovery rules between first- and third-party bad faith claims." *Id.* at 1129. "There simply is no basis upon which to distinguish between first- and third-party cases with regard to the rationale of the discoverability of the claim file type material." *Id.*

*Genovese*, 74 So.3d 1064, 1069. Later in her special concurrence, Justice Pariente also asserted, "[y]et, while we strived in *Ruiz* to level the playing field in the critical area of discovery between first- and third-party bad faith cases, we must acknowledge that we do not have the independent authority to abrogate the attorney-client privilege, even in the context of bad faith claims." *Id.* at 1070. The special concurrence gives further weight to this Court's determination that *Genovese* should apply in a third-party bad faith case so as to protect attorney-client privileged materials in an insurer's claim file. Based on the above, the communications between the insured, Junie Telfort, and her counsel, Kubicki Draper, are clearly protected by the attorney-client privilege.

■ The next issue is whether GEICO's communications with the insured's counsel should also be protected by the attorney-client privilege in this third-party bad faith action. According to the Florida Rules Regulating the Florida Bar 4–1.7(e), "[u]pon undertaking the representation of an insured client at the expense of the insurer, a lawyer has a duty to ascertain whether the lawyer

will be representing both the insurer and the insured as clients, or only the insured, and to inform both the insured and the insurer regarding the scope of the representation." The comment to the rule alludes to the "unique tripartite relationship of the insured, insurer and lawyer" and explains that "the lawyer may represent both as dual clients." *See* Comment to R. Regulating Fla. Bar 4–1.7(e). Thus, an attorney can ethically represent both an insurer and an insured under some circumstances, and the Court finds that the law firm of Kubicki Draper did so in the underlying claim.

Prior to filing their supplemental memoranda, the parties primarily focused their analysis on the *Scoma*, 975 So.2d 461, and *Baxley*, 2010 WL 1780796, opinions [2], and not on the *Genovese* opinion. In *Scoma*, 975 So.2d 461, 463, a third-party beneficiary to the insurance contract filed suit against the insurer, claiming that the insurer acted in bad faith in failing to settle her claim against the insured. The insured never formally assigned any claim he might have against the insurer to the third-party beneficiary. *Id.* The Florida appellate court held that communications between the insurer and its counsel were protected by the attorney-client privilege. *Id.* at 465. The court explained that, although the third party claimant may stand in the shoes of the insured "for purposes of standing to bring a bad faith action", that standing does not permit the third party claimant access to attorney-client privileged communications between the insured and his counsel in the absence of a waiver of the privilege by the insured or the insured's written assignment of the bad faith claim. *Id.* The court further stated that "[a] person does not waive or otherwise lose an attorney-client privilege merely because a third party is authorized to file a lawsuit against the person's insurance company." *Id.* Most relevant to the issue at hand, the *Scoma* court explained "the confidential communications between the insured, the insurer, and any counsel representing them regarding the matter of common interest are protected by

the attorney-client privilege from discovery by third parties." *Id.* at 467.

In the case at hand, the insured, Junie Telfort, never formally waived the attorney-client privilege and never assigned her rights to Maharaj. Furthermore, this case involves a third-party claimant who never had any access to attorney-client privileged communications between the insured's counsel and the insured or between the insured's counsel and the insurer in the underlying litigation. Therefore, as explained in *Scoma*, any attorney-client privileged communications between GEICO and the insured's counsel should continue to be protected.

A federal court in the Northern District of Florida rejected the holding in *Scoma*. *See Baxley*, 2010 WL 1780796. The *Baxley* court stated in part that, "Plaintiff convincingly argues that *Scoma* is an aberration that conflicts with numerous cases that have allowed plaintiffs in third-party bad faith cases to have discovery of communications between insurers and defense counsel, regardless of whom counsel represented." *Id.* at *3. The court further held that the "tripartite relationship does not automatically give rise to an attorney-client relationship or provide support for an argument that Geico has standing to assert a privilege, and the court finds that the protection of privilege does not apply to plaintiff's discovery requests." *Id.* at *4.

The *Baxley* opinion was issued without the court having had the benefit of the Florida Supreme Court's opinion in *Genovese*, however, which held that, in a first-party bad faith action, the insured did not have the right to attorney-client privileged documents contained in the insurer's claim file. When *Scoma* is considered in conjunction with *Ruiz* and *Genovese*, the Florida courts' logical progression toward protection of the attorney-client privilege in both first-party and third-party bad faith actions becomes evident.

■ In its supplemental memorandum of law, GEICO lists four different categories of communications that could feasibly be pro-

---

**2.** Although GEICO's response (DE 17, p. 5) did mention *Genovese,* it did so in passing and without extensive analysis of the opinion.

tected by the attorney-client privilege: (1) those between the insured and her counsel; (2) those between GEICO and its outside counsel; (3) those between GEICO and its in-house legal counsel; and (4) those between GEICO and the insured's counsel. This Order has already discussed the first and fourth categories. Based on the reasoning in *Genovese, Ruiz,* and *Scoma,* the Court determines that communications between GEICO and its outside counsel and between GEICO and its in-house legal counsel would similarly be protected by the attorney-client privilege in a third-party bad faith case. GEICO and its outside or in-house counsel have a clearly defined attorney-client relationship that should remain intact in the third-party bad faith context based on the legal analysis in *Ruiz, Genovese,* and *Scoma.*

Maharaj's motion to compel attorney-client privileged claim file materials is therefore denied. GEICO should not be compelled to produce attorney-client protected correspondence between the insured and insured's counsel or insurer and insured's counsel and should not be compelled to produce activity log excerpts that pertain to said communications. As per Maharaj's request, however, the Court will complete an *in camera* review of the documents listed in the Supplemental Privilege Log to ensure that the documents are truly covered by the attorney-client privilege.

## B. PERSONNEL FILES

The Court will now address Maharaj's request for personnel files for GEICO's adjusters. In the case at hand, a review of the pleadings shows that the real issue is whether GEICO acted in bad faith first by requiring Plaintiff to sign a release containing an indemnification clause and a property damage clause as a condition of settlement and by failing to eliminate all of the portions of the release that were disagreeable to Plaintiff prior to the jury verdict. This type of bad faith allegation is unrelated to the personnel files of almost all of the individual claims adjusters involved in the case. However, in Plaintiff's Complaint, she specifically alleges that GEICO adjuster Matthew Green advised Mr. Metnick that "GEICO would not settle Kameran Maharaj's claim without the inclusion of the indemnification provision." Compl. ¶ 16. This allegation substantiates Maharaj's argument that Green had more than incidental or minimal involvement in adjusting the claim.

■ In *Turner v. Geico Indemnity Co.,* No. 11–20546–CIV–MARTINEZ/MCALILY (S.D.Fla. Sept. 8, 2011), the court found that the personnel files of employees responsible for adjusting a claim in a bad faith case were relevant as they pertained to the "training, supervision and control of those GEICO employees; the competence of the employees assigned to this claim; GEICO's knowledge of their professional abilities or shortcomings; and the standards for evaluating an employee's performance." Additionally, the court found that documents concerning the employees' compensation were relevant as the documents could show that compensation was "tied to the amount of payments made on claims handled by any employee." As alleged in the Complaint, Matthew Green was directly involved in negotiating the terms of the release that GEICO was requiring Plaintiff to sign. Additionally, Matthew Green is mentioned throughout GEICO's Supplemental Privilege Log. *See* DE 15–3. Therefore, applying the analysis utilized by the *Turner* court, Matthew Green's personnel file is relevant to the bad faith action at hand. None of the other adjusters' personnel files appear to be relevant at this time, however, based upon the information before the Court.

Similarly, in an order in *Baxley,* 2010 WL 1780796, the court reviewed three personnel files and compelled their production. The court explained that, "[s]ince the gist of this action is that defendant's employees mishandled the underlying claim, documents concerning their training, experience and related matters dealing with overall competence may lead to discoverable evidence." In this case, Plaintiff has solely alleged in her Complaint that Matthew Green's mishandling of the underlying claim is at issue; none of the other adjusters were mentioned. Moreover, Plaintiff has not made a sufficient argument in her motion to compel as to how any other GEICO adjusters mishandled the underlying

claim and why their personnel files are relevant to the bad faith action. The Court cannot discern from the evidence before it whether Kathleen Watkins, Gary Gertz, Mark Sugden, Miriam Rivera, Cindy Tucker–Blangeard, Lawrence Corry, and Rony Braswell (the adjusters that Plaintiff mentioned in her motion as having had more than incidental involvement in adjusting the claim) actually had more than incidental or minimal involvement with the underlying claim. Some of·these individuals were mentioned in the privilege log, but the Court cannot determine without further evidence and argument what their roles were with regard to adjusting Plaintiff's claim.

■ With respect to the adjusters other than Mr. Green, the Court finds that Plaintiff's request is overly broad, seeks information that has no bearing on the claims and defenses at issue in this matter, and could not lead to the discovery of admissible evidence. Moreover, the request seeks highly personal and confidential information for which Plaintiff has not established any legitimate need. Further, the need to protect constitutional privacy rights inherent in personnel files outweighs the need for such discovery under the facts of this case.

In *Tolz v. Geico General Ins. Co.*, No. 08–80663–CIV, 2010 WL 298397 (S.D.Fla. Jan. 19, 2010), the district court upheld the magistrate judge's denial of a request to produce the personnel files, including performance reviews and evaluations, of certain insurance adjusters in a bad faith claim. Specifically, the court found that information contained in the nonpublic employee personnel files was not reasonably calculated to lead to the discovery of admissible evidence and that the need to protect constitutional privacy rights inherent in personnel files outweighed the need for discovery. *Id.* at *3–4. The court explained that the documents sought by the moving party would be inadmissible as either "irrelevant to the current action, inadmissible prior act evidence, evidence of subsequent remedial measures, and/or protected opinion work-product." *Id.* at *4. In arriving at its conclusions, the court relied on a Florida Supreme Court decision which states the following:

No party has the right to conduct a general fishing expedition into the personnel records of another. Any request for information that does not directly relate to legitimate issues that may arise in the course of the trial ought to be denied. In recognizing the danger of permitting the disclosure of personnel records of any witness or litigant, one court has said: "It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility."

*Id.* at *3 (*citing Alterra Healthcare Corp. v. Estate of Shelley*, 827 So.2d 936, 944–45 (Fla.2002)(*internal citation omitted*)). The Court agrees with the rationale and analysis behind the *Tolz* decision, adopts it herein, and finds that production of the personnel files of adjusters other than Matthew Green should not be compelled at this point in the litigation. In the event that Maharaj later determines that additional adjusters other than Matthew Green had more than incidental or minimal involvement in handling the claim, then she can file an additional motion to compel personnel files setting forth a sufficient basis for disclosure as to each specific adjuster.

### CONCLUSION

Based on the foregoing, Plaintiff's Motion to Compel Production of Documents (DE 15) is **GRANTED IN PART AND DENIED IN PART.** The motion to compel is **GRANTED** solely as to Matthew Green's personnel and/or training file. On or before February 11, 2013, GEICO shall produce the documents from Matthew Green's personnel and/or training file from May 17, 2004, to February 22, 2012, subject to the following limitations. This information may only be used for purposes of the litigation of the instant case and shall not be shared with any person or entity that does not have a legitimate need to know the information on account of their involvement with the case. All personal matters not related to claim handling shall be redacted from the file. This includes, but is not limited to, social security

numbers, telephone numbers, information relating to Mr. Green's family, and protected health information. The remainder of Plaintiff's Motion to Compel Production of Documents (DE 15), including Maharaj's request to compel documents in GEICO's claim file covered by the attorney-client privilege, is **DENIED.**

In light of the Court's Order and Maharaj's request that the Court conduct an *in camera* review, GEICO is **ORDERED** to submit to this Court, for an *in camera* inspection, all documents listed in the Supplemental Privilege Log that are allegedly protected by the attorney-client privilege. All such documents must be submitted to the chambers of the undersigned, located at 701 Clematis Street, West Palm Beach, Florida 33401, no later than **5:00 p.m.** on **FEBRUARY 11, 2013.** Upon receipt and review of the documents *in camera,* the undersigned will determine whether GEICO should be compelled to produce any additional materials to Maharaj.