687 So.2d 888 (1997)
Fred M. CONE, Jr., individually, and in his capacity as Trustee of the Hugh F. Culverhouse Trust, Petitioner,
v.
Joy McCann CULVERHOUSE, The Hugh F. Culverhouse Trust, Hugh F. Culverhouse, Jr., Gay Culverhouse, and The Culverhouse Family Foundation, Inc., Respondents.
Stephen F. STORY and John M. Donlan, individually and in their capacity as Trustees of Hugh F. Culverhouse Trust, Petitioners,
v.
Joy McCann CULVERHOUSE, The Hugh F. Culverhouse Trust, Hugh F. Culverhouse, Jr., Gay Culverhouse, and The Culverhouse Family Foundations, Inc., Respondents.
Fred M. CONE, Jr., individually, and as a Partner of Cone, Purcell & Flanagan, P.A., and Cone, Purcell & Flanagan, P.A., Petitioners,
v.
Joy McCann CULVERHOUSE, Respondent.
Nos. 96-03848, 96-03869 and 96-04226.
District Court of Appeal of Florida, Second District.
January 29, 1997.
*889 Thomas M. Baumer, Dana G. Bradford II, and Rebecca B. Creed of Baumer, Bradford & Walters, P.A., Jacksonville, for Petitioner Fred M. Cone, Jr., individually.
Edward O. Savitz and Mahlon H. Barlow of Bush Ross Gardner Warren & Rudy, P.A., Tampa, for Petitioners Fred M. Cone, Jr., individually, and as Partner of Cone, Purcell & Flanagan, P.A., and Cone, Purcell & Flanagan, P.A.
Donald A. Gifford and Rebecca H. Steele of Shackleford, Farrior, Stallings & Evans, P.A., Tampa; and co-counsel Thomas C. Tew, Kathy Adams Gibbs, and Lawrence A. Kellogg of Tew & Beasley, L.L.P., Miami, for Respondent Joy McCann Culverhouse.
Marvin E. Barkin, Karen E. Lewis, Richard M. Hanchett of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, for Petitioners Story and Donlan.
ALTENBERND, Judge.
In this opinion, we consolidate three petitions for writ of certiorari that seek to quash discovery orders in two different lawsuits. Joy McCann Culverhouse has filed an action (the trust lawsuit) against Stephen F. Story, John M. Donlan, and Fred M. Cone, Jr., as trustees of two trusts created by the Hugh Culverhouse Trust Agreement. She challenges their conduct in the management of the trusts, seeks the removal of the trustees, and requests an accounting. The trustees are also the personal representatives of Mr. Culverhouse's estate. In a separate action against Mr. Cone and the law firm of Cone, Purcell & Flanagan, P.A. (the Cone law firm), Mrs. Culverhouse alleges legal malpractice (the malpractice action).
During discovery in these actions, Mrs. Culverhouse has sought to obtain documents containing lawyer-client communications between either Mr. Culverhouse, corporations that he controlled, his personal representatives or the trustees, and the Cone law firm. She has also sought to obtain documents containing accountant-client communications between the same parties and the accounting firm of Garrett, Wood & Co., P.A. In the trust lawsuit, the trial court determined that both the Cone law firm and the accounting firm (collectively referred to hereinafter as the professionals) represented Mrs. Culverhouse, Mr. Culverhouse or his personal representatives, and the trustees "in common," and required broad disclosure of documents containing these communications. The trial court in the malpractice action subsequently entered a similar discovery order based on the order in the trust case.
We conclude that the trial courts in each case correctly decided that Mrs. Culverhouse is entitled to discover documents containing privileged communications in any matter in which these professionals represented her. This includes matters in which the professionals provided common representation for Mrs. Culverhouse and other persons or entities. We conclude, however, that both trial courts have adopted an overly expansive interpretation of the "common interest" exception found in sections 90.502 and 90.5055, Florida Statutes (1995). That exception requires trial courts to examine communications involving a distinct "matter" to determine whether the clients in that matter had such common interests that objectively the client involved in the communications lacked a reasonable basis to preserve the confidentiality of the communications from the other client. The fact that a professional represents two clients in common for one professional matter at a given time does not waive the professional communication privilege for other times and other matters.
Thus, we grant the petitions to the extent that we direct the trial court on remand to order the professionals to produce only those documents which they currently agree contain communications in matters in which Mrs. Culverhouse was represented in common with another client. If Mrs. Culverhouse desires to review additional documents that the professionals maintain relate to separate matters involving other clients, the trial court shall conduct an additional evidentiary hearing, and if necessary, arrange for those documents to be reviewed in camera to determine whether they actually relate to a matter of joint representation.

I. THE EVENTS LEADING TO THE LAWSUITS

Joy and Hugh Culverhouse were married for more than fifty years. Stephen F. Story *890 and Fred M. Cone, Jr., were long-time friends of the family. At one time, the two men were Mr. Culverhouse's law partners. As his business interests grew, the two men served as lawyers and advisors for Mr. Culverhouse, his family, and his businesses. The Cone law firm represented Mr. Culverhouse and also represented Mrs. Culverhouse in estate planning and individual personal matters. The accounting firm of Garrett, Wood & Co. provided similar services to the Culverhouses. The Cone law firm and the accounting firm represented or advised the couple in some matters in which Mr. and Mrs. Culverhouse appear to have had joint or common interests.
In January 1993, the law firm prepared a comprehensive estate plan for Mr. Culverhouse. This plan included a will and the Hugh F. Culverhouse Trust Agreement. The trust agreement created two trusts, Marital Trust A and Marital Trust B. This estate plan contemplated that the trusts would be funded primarily after Mr. Culverhouse's death from his estate. Mrs. Culverhouse was the sole income beneficiary for both trusts. The couple's children or lineal descendants were the beneficiaries of the principal in Trust A, and the Culverhouse Family Foundation, Inc. (the foundation), was the beneficiary of the principal in Trust B. It is undisputed that the Cone law firm represented Mr. Culverhouse while preparing this plan.
At the same time, the law firm prepared a post-marital property settlement agreement for Mrs. Culverhouse. One of the unresolved disputes in these cases hinges on whether a single lawyer could properly represent Mr. Culverhouse in the preparation of the trusts and Mrs. Culverhouse in the property settlement agreement. Mrs. Culverhouse's pleadings are based on a theory that she and her husband had conflicting interests that could not properly be handled in common by one lawyer.
When Mr. Culverhouse died on August 25, 1994, Mr. Story, Mr. Cone, and Mr. Donlan were wearing many hats. They were the directors of Tampa Bay Area NFL Football, Inc., the corporate owner of the Tampa Bay Buccaneers. They were the trustees of the two trusts created by the Hugh F. Culverhouse Trust Agreement. They were the personal representatives of Mr. Culverhouse's estate. They were also the directors of the Culverhouse Family Foundation, Inc. It is Mrs. Culverhouse's position that the three men had impermissible conflicts of interest within these roles. For example, she argues that, if they maximized her benefits as the income beneficiary in their capacity as trustees, they would reduce the corpus available to the foundation which they directed.
At the time of Mr. Culverhouse's death, the Cone law firm was representing Mrs. Culverhouse, the personal representatives of Mr. Culverhouse's estate, the trustees of the two trusts, and the foundation. Likewise, the accounting firm was providing accounting services for these clients. Prior to Mr. Culverhouse's death and the need to manage the trusts and fund them from the estate, the actual or potential conflicts among these clients may have been modest. Some aspects of the accounting services would have been necessarily interrelated. Nevertheless, these clients unquestionably had separate legal interests and were not being represented as a single entity.
Shortly after Mr. Culverhouse died, Mrs. Culverhouse retained her own attorney and began demanding that the trustees fund the trust and provide her with the anticipated income. In August 1995, Mr. Thomas Purcell of the Cone law firm sent a letter to his partner, Mr. Cone, as well as to Mr. Story, Mr. Donlan, Mrs. Culverhouse, and Hugh F. Culverhouse, Jr. The letter describes the various work that the firm had done for its several clients in the past and states:
There are actual and potential conflicts inherent in our continuing to do business as usual. There are also practicalities. I would ask each of you to consider the conflicts and if you feel it is appropriate, authorize me to continue to perform personal services for Mrs. Culverhouse, other than any possible buy-out of her interest in Marital Trust B or in connection with any dissolution of Marital Trust A, and also continue to provide legal services to the trust and estate, despite the conflict. If you are in agreement, please sign the enclosed *891 copy of this letter and return it to me.
Each recipient signed the letter below the following statement:
Being fully advised of the conflict of interest in Mr. Purcell's representation of the trust and estate of Hugh F. Culverhouse, Sr. and Mrs. Culverhouse individually, the parties hereto mutually agree to waive any conflict and request that Mr. Purcell continue to provide personal legal services to Mrs. Culverhouse, the estate, trust and trustees as fiduciaries. The parties agree to inform Mr. Purcell in writing of any revocation of this waiver.
Whether this letter was a timely and adequate disclosure under rule 4-1.7, Rules Regulating the Florida Bar, is not a matter that has been resolved.
Before the letter was signed, Mr. Story, Mr. Cone, and Mr. Donlan, as directors of Tampa Bay Area Football, Inc., declared an $11.3 million dividend, which allegedly was not disclosed to Mrs. Culverhouse until December 1995. Shortly after she maintained that the dividend was income rather than corpus, the Cone law firm withdrew from its representation of the trust, and the accounting firm withdrew from representing Mrs. Culverhouse. Mrs. Culverhouse filed the trust lawsuit in February 1996. Thereafter, she filed the malpractice action.[1]

II. THE DISCOVERY DISPUTE

In both lawsuits, Mrs. Culverhouse filed requests for the production of documents. In the trust lawsuit, she requested the three trustees to produce various documents including opinions of counsel and other records submitted to the trustees by the Cone law firm after Mr. Culverhouse's death. She also requested copies of accounting documents received by the trustees from the accounting firm in the same period. In the malpractice action, she requested documents including communications from Mr. Culverhouse, and communications with Mr. Story, Mr. Cone, or Mr. Donlan in their several capacities.
The defendants in both lawsuits objected to the production, raising various objections, including lawyer-client privilege and accountant-client privilege. The Cone law firm prepared a log of privileged documents that begins with documents created in November 1992 and ends with documents prepared in 1996. The actual documents are not in this record, and apparently have not been reviewed in camera by either trial court.
Mrs. Culverhouse filed motions to compel in both actions. The issue was first resolved in the trust lawsuit. Following an evidentiary hearing, the trial court determined that because both the law firm and the accounting firm were engaged in a "joint representation" of Mrs. Culverhouse, the trust, and the three trustees, no accountant-client or attorneyclient privilege existed at any time prior to the commencement of the lawsuits. Concerning the lawyer-client privilege, the trial court relied upon the waiver of conflict letter as evidence of a joint representation. Thereafter, the trial court in the malpractice action entered a similar order, relying in large part upon the trial court's ruling in the trust lawsuit. Both orders indicate a willingness of the trial courts to examine the documents in camera, but neither court intends to reexamine the decision that these communications arise out of a joint representation.

III. THE COMMON INTEREST EXCEPTION

The lawyer-client and accountant-client privileges are subject to several statutory exceptions. Although the complex allegations in this case may suggest several possible avenues to overcome these professional privileges, the only exception at issue in this case is the "common interest" exception. The lawyer-client privilege contains this exception in section 90.502(4)(e), Florida Statutes (1995):
90.502 Lawyer-client privilege
(4) There is no lawyer-client privilege under this section when:
. . . .

*892 (e) A communication is relevant to a matter of common interest between two or more clients, or their successors in interest, if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients or their successors in interest.
The accountant-client privilege has a similar exception in section 90.5055(4)(c), Florida Statutes (1995):
90.5055 Accountant-client privilege.
(4) There is no accountant-client privilege under this section when:
. . . .
(c) A communication is relevant to a matter of common interest between two or more clients, if the communication was made by any of them to an accountant retained or consulted in common when offered in a civil action between the clients.
It is worth emphasizing that these privileges are possessed by the client and can only be raised by the professional on behalf of the client. §§ 90.502(3), .5055(3). The burden to prove the privilege rests on the client seeking to invoke it. Florida Sheriff's Self-Insurance Fund v. Escambia County, 585 So.2d 461 (Fla. 1st DCA 1991). In this proceeding, the parties do not contest that Mr. Cone, Mr. Story, and Mr. Donlan in their various client capacities have established a prima facie basis for the privilege. Thus, the burden of proof to establish the common interest exception shifted to Mrs. Culverhouse.
There is little Florida case law on these exceptions. The parties extensively discuss Barnett Banks Trust Co. v. Compson, 629 So.2d 849 (Fla. 2d DCA 1993). That case did involve a trust beneficiary suing the trustee, but the facts are far less complex. Escambia County involves the common interest exception in the context of an attorney who represented both the insurer and the insured in one lawsuit. Transmark, U.S.A. v. State, Dep't of Ins., 631 So.2d 1112 (Fla. 1st DCA 1994), involved accountants and attorneys who represented several clients in a corporate restructuring.[2] In that case, the common interest exception was simplified by the determination that "there was no expectation of confidentiality among the various companies within the Transmark family." Id. at 1116. None of these cases provide much guidance in deciding whether or to what extent a professional representation in common may exist in this case.
The California Evidence Code has a similar lawyer-client exception. See Cal. Evid. Code § 962 (West 1997). We have found the discussions of those provisions to be helpful in analyzing the Florida statutes, although we do not adopt any specific analysis within these cases. See McMorgan & Co. v. First California Mortgage Co., 931 F.Supp. 699 (N.D.Cal.1996); Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd., 150 F.R.D. 648 (N.D.Cal.1993); Rockwell Int'l Corp. v. Superior Court, 26 Cal.App.4th 1255, 32 Cal. Rptr.2d 153 (1994). The California cases, however, convince us that the common interest exception must be examined from the perspective of an objectively reasonable client, not from a particular client's subjective expectations or from the attorney's perspective. The trial court in the trust lawsuit relied on one attorney's subjective perspective of the conflicting client relationships in finding a joint representation. Thus, we conclude that the court approached the common interest exception from an incorrect perspective.
The statutory exceptions to these professional privileges are based on "a matter" of common interest. The concept of "a matter" is not defined in the statute or clarified in prior Florida cases. Although it must be a flexible concept, we conclude that "a matter" typically involves one "transaction, event, or occurrence." Black's Law Dictionary 978 (6th ed.1990). Two clients who purchased a parcel of real estate as tenants in common would be clients involved in a single matter. A civil lawsuit with two clients who are represented as codefendants would be one matter. *893 The trial courts in these cases seem to assume that the entire representation of all the Culverhouse family enterprises over an extended time was a single matter for both professionals. We cannot determine how many matters are relevant in the pending actions, but these two lawsuits clearly involve issues arising from more than one matter.
The exceptions to the professional privileges also require that the matter be one "of common interest." The facts in Escambia County demonstrate that "common interest" can exist, even if some conflict is present or stands between the clients. Cf. Hamilton v. Hamilton Steel Corp., 409 So.2d 1111 (Fla. 4th DCA 1982) (stating that "communication was of common, even if adverse, interest between two or more clients and was made by some (viz. any) of them to a lawyer jointly retained or consulted"). Nevertheless, the clients' interests must be sufficiently compatible that a reasonable client would expect his or her communications concerning the matter to be accessible to the other client. For example, a married couple creating an estate plan with interrelated documents probably have no reasonable expectation of confidentiality concerning the matter of the joint estate plan, but might still have such expectations concerning their individual, private discussions with their lawyer about the reasons for including or excluding specific bequests to third persons in their individual wills.
The trial court in the trust lawsuit relied extensively on the waiver of conflict letter dated August 3, 1995, as evidence of representation in common. If anything, this letter was the Cone law firm's effort to avoid sharing future personal confidences among clients with conflicting interests. A reasonable client receiving such a letter would have recognized that many, if not all, of the matters handled thereafter by the Cone law firm were not in common but rather separate. We conclude that the trial court erred in relying on this letter as a basis to find an overall matter in common.
Finally, this exception to the professional privilege applies only to communications to an attorney "retained or consulted in common." Both Mrs. Culverhouse and the foundation, for example, retained the Cone law firm. In this record, there is no evidence to establish that they retained or consulted that law firm in common on any specific matter. The common interest exception does not appear to be a method to allow the directors of the foundation to know Mrs. Culverhouse's communications with her attorney concerning her will or to allow her to know their communications with the Cone law firm concerning the foundation's matters.
Because our record does not contain the documents in dispute and the allegations in these actions are complex and unresolved, we cannot determine whether there are documents that fit within these exceptions. On remand, if necessary, the trial courts should conduct additional hearings and consider the disputed documents in camera, perhaps with the assistance of a special master, to determine whether the documents contain communications that fit within the common interest exceptions.
DANAHY, A.C.J., and WHATLEY, J., concur.
NOTES
[1] It is worth emphasizing that neither lawsuit has proceeded to trial and no facts have been determined by a judge or jury. Thus, this description is based only on pretrial information and allegations.
[2] Transmark holds that the several clients do not need to be physically present when a communication is made for that communication to fall within the common interest exception. In this case, we agree that the common interest exception would permit discovery of communications involving only one of the jointly represented clients.