ORFINGER, J.
Petitioners, Emily Lynn Boozer, and her attorney, Virgil Wright, III, seek certiorari review to quash the trial court’s order allowing Douglas Stalley, guardian of the property of Benjamin Hintz, to depose and obtain documents from Boozer’s attorney, Wright. We consider this case en banc, sua sponte, to recede from Dunn v. National Security Fire & Casualty Co., 631 So.2d 1103 (Fla. 5th DCA 1993), insofar as it addresses the discovery of attorney-client protected communications in bad faith insurance actions. We grant the petition and quash the order to the extent that it ordered Wright to submit to a deposition and produce documents without adequate consideration of Boozer’s attorney-client privilege.

*141
Background

Benjamin Hintz was injured in a motor vehicle accident involving Boozer. Boozer’s liability for the accident was covered under at least two insurance policies, one issued by Allstate Indemnity Company and the other by Allstate Insurance Company (collectively, “Allstate”). Together, the two polices provided a total of $1.1 million in bodily injury liability coverage. Stalley, Hintz’s guardian, filed an auto negligence suit against Boozer, and Allstate retained Wright to defend her. Settlement discussions failed to resolve the dispute and following a trial, Stalley recovered a judgment against Boozer in excess of $11.1 million, which was not appealed. Allstate paid its policy limits of $1.1 million, leaving the remainder of the judgment unsatisfied. Stalley’s current efforts to collect on the judgment include filing a bad faith action against Allstate. Attorneys hired by Allstate, including Wright, have continued to appear on Boozer’s behalf in the post-judgment proceedings.
During the third-party bad faith litigation, Stalley sought to depose Boozer’s attorney, Wright, and subpoenaed his original files in the underlying action. Asserting the attorney-client privilege on behalf of Boozer and Allstate, Wright and Boozer moved for a protective order, asking the trial court to limit both the deposition and the document production to prevent the forced disclosure of attorney-client privileged information. At a hearing on the motion, Wright argued that he represented Boozer and their communications were protected by the attorney-client privilege. Wright explained that Boozer’s interests were not aligned with Stalley and that she had not assigned any of her rights to him. Relying on this Court’s decision in Dunn, Continental Casualty Co. v. Aqua Jet Filter Systems, Inc., 620 So.2d 1141 (Fla. 3d DCA 1993), and Baxley v. Geico General Insurance Co., No. 5:09cv343/RS/MD, 2010 WL 1780796 (N.D.Fla. May 4, 2010), the trial court denied Wright’s motion and his request to stay the deposition pending appellate review of the order.
Wright appeared for his scheduled deposition with the pleadings and correspondence from his file. He answered general questions concerning how his files were organized and the case management system that the firm used. However, after he refused to answer any questions or produce any documents related to his direct representation of Boozer, the deposition was adjourned. Wright and Boozer then filed the instant petition for writ of certio-rari, arguing that the trial court’s denial of the motion for protective order constituted a departure from the essential requirements of the law, which causes irreparable injury that cannot be remedied on appeal. Stalley responds that long-standing Florida precedent holds that in the context of third-party bad faith litigation, he stands in the shoes of Boozer and may obtain discovery of any materials that would be available to her, including those that would otherwise be protected by the attorney-client privilege.

Analysis

Certiorari review is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal. Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995); Montanez v. Publix Super Mkts., Inc., 135 So.3d 510, 512 (Fla. 5th DCA 2014). Discovery of certain types of information may cause material injury of an irreparable nature, including “cat out of the bag” material that constitutes work product or material protected by privilege. E.g., Langston, 655 So.2d at *142 94; Wilder v. Wilder, 993 So.2d 182, 184 (Fla. 2d DCA 2008); Am. Home Assur. Co. v. Vreeland, 973 So.2d 668, 671 (Fla. 2d DCA 2008). “When an order directs disclosure of information that is allegedly privileged, ‘[t]he next question is whether the order departs from the essential requirements of law.’ ” Coates v. Akerman, Senterfitt & Eidson, P.A., 940 So.2d 504, 506 (Fla. 2d DCA 2006) (quoting Estate of Stephens v. Galen Health Care, Inc., 911 So.2d 277, 279 (Fla. 2d DCA 2005)).
Whether a defense attorney retained to represent the insured and the insurer could be deposed and required to produce his file in a subsequent bad faith action brought by the injured party without an assignment from the insured was first considered in Boston Old Colony Insurance Co. v. Gutierrez, 325 So.2d 416, 416 (Fla. 3d DCA 1976). In allowing the attorney to be deposed, the third district explained:
In Shingleton v. Bussey, 223 So.2d 713 (Fla.1969), the Florida Supreme Court established the doctrine that an insured has the right to recover against his insurer because of the latter’s bad faith in failing to settle a claim against its insured within policy limits. In extending the Shingleton doctrine, the Florida Supreme Court held, in Thompson v. Commercial Union Insurance Company of New York, 250 So.2d 259 (Fla.1971), that a plaintiff in a personal injury action who obtained a judgment against a defendant in excess of the defendant’s insurance coverage could bring an action for bad faith against the insurance company without [an] assignment from the defendant insured on the third party beneficiary theory. It is well established that a third person can enforce a contract entered into between others for his benefit. See 81 A.L.R. 1279. As a third party beneficiary of the insurance policy, Gutierrez stands in the same posture as that of Brown, the insured. Just as Brown would be entitled to discovery, including deposition and production of files by the attorneys, since both he (Brown) and Boston Old Colony were their clients, Gutierrez has the same right of discovery in furtherance of the preparation of his case.
Id. at 417; see also 620 So.2d at 1142 (“[W]e find that the trial court correctly ruled that Aqua Jet had the right to obtain Kubicki Draper’s litigation files where the attorney-client and work product privileges do not preclude production of the files in a third party bad faith context.”); Stone v. Travelers Ins. Co., 326 So.2d 241, 243 (Fla. 3d DCA 1976) (citing Boston Old Colony, and holding plaintiff in third-party bad faith action against insurance company for failure to settle claim for policy limits is entitled to entire litigation file of insured’s counsel from inception of lawsuit until date that judgment was entered in underlying action since plaintiff judgment creditor stands in same posture as insured).
This Court had the opportunity to consider a similar issue in Dunn, when the plaintiff in a third-party bad faith claim sought the insurer’s claim and litigation file. In rejecting the insurer’s claim of work product and attorney-client privilege, we reasoned:
In bad faith suits against insurance companies for failure to settle within the policy limits, all materials in the insurance company’s claim file up to the date the judgment in the underlying suit are obtainable, and should be produced when sought by discovery. Continental Casualty Co. v. Aqua Jet Filter Systems, Inc., 620 So.2d 1141 (Fla. 3d DCA 1993); U.S. Fire Insurance Co. v. Clear-water Oaks Bank, 421 So.2d 783 (Fla. 2d DCA 1982); Aaron v. Allstate Insur- *143 anee Co., 559 So.2d 275 (Fla. 4th DCA), rev. denied, 569 So.2d 1278 (Fla.1990); Koken v. American Service Mutual Insurance Co., Inc., 380 So.2d 805 (Fla. 3d DCA 1976); Stone v. Travelers Insurance Co., 326 So.2d 241 (Fla. 3d DCA 1976). Additional memos or documents in the file after date of the judgment can be obtained with a showing of good cause. Stone v. Travelers Insurance Co.
Discovery of the insurer’s claim file and litigation file is allowed in a bad faith case over the objections of the insurer that production of the file would violate the work product or attorney/client privilege. Continental Casualty Co. The rationale (as discussed above) is because the injured third party “stands in the shoes” of the insured party in a third party bad faith case and the insurer owed a fiduciary duty to its insured. Aaron v. Allstate Insurance Co.; Continental Casualty Co. v. Aqua Jet Filter Systems, Inc.
631 So.2d at 1109; see also United Seros. Auto. Ass’n v. Jennings, 731 So.2d 1258, 1260 (Fla.1999) (holding that victim stood in shoes of insured by virtue of stipulation that served as functional equivalent of excess judgment, and neither attorney-client nor work product privileges protected claims file through date of stipulation). Collectively, these decisions support Stal-ky’s argument, and the trial court’s ruling, that the attorney-client privilege does not prevent him from reviewing Wright’s tort litigation file or deposing Wright concerning his representation of Boozer in the underlying tort litigation. However, several decisions subsequent to Dunn and Jennings require us to rethink our holding that allowed discovery of attorney-client privileged information in bad faith actions.
In Allstate Indemnity Co. v. Ruiz, 899 So.2d 1121, 1122 (Fla.2005), the Florida Supreme Court held that in first-party bad faith actions brought pursuant to section 624.155, Florida Statutes (2002), work product materials were discoverable. Important to our consideration of this case, the Ruiz decision moved away from past case law distinguishing first- and third-party bad faith actions, explaining that the enactment of section 624.155, “created a statutory first-party bad faith cause of action for first-party insureds” that “ushered out the distinction between first- and third-party statutory claims for the purposes of initiating bad faith actions.” Id. The court noted that “some court decisions have continued to draw inappropriate distinctions in defining the parameters of discovery in those bad faith actions,” but indicated that “any distinction between first- and third-party bad faith actions with regard to discovery purposes is unjustified and without support under section 624.155 and creates an overly formalistic distinction between substantively identical claims.” Id. at 1126, 1128. Making the point clearly, the court said that “[tjhere simply is no basis upon which to distinguish between first- and third-party cases with regard to the rationale of the discov-erability of the claim file type material.” Id. at 1129.[1]
*144 While Ruiz concerned work product, our Court implicitly recognized a shift in the landscape when we held in West Bend Mutual Insurance Co. v. Higgins, 9 So.3d 655, 658 (Fla. 5th DCA 2009),[2] that in the context of a first-party bad faith proceeding, Ruiz did not extend to materials protected by the attorney-client privilege, reasoning:
Although the Florida Supreme Court has concluded that section 624.155 applies to first-party insurance disputes as well as third-party claims, and that the immunity from disclosure of the claim file based on work product ought not to apply, nothing in Ruiz suggests that the attorney-client privilege available to any contracting party, including insurers, somehow evaporates uniquely for insureds upon the filing of a bad-faith claim. We see nothing in Ruiz to suggest that a first-party insurer against whom a bad faith claim has been made is subject to the exposure of all its communications with its own counsel.
Other district courts and several federal courts in Florida have reached the same conclusion, holding that the attorney-client privilege continues to exist and be available to insurers that are defending statutory bad faith claims. See, e.g., State Farm Fla. Ins. Co. v. Seville Place Condo. Ass’n, 74 So.3d 105, 112 (Fla. 3d DCA 2011); State Farm Fla. Ins. Co. v. Puig, 62 So.3d 23, 26 (Fla. 3d DCA 2011); Progressive Express Ins. Co. v. Scoma, 975 So.2d 461, 465 (Fla. 2d DCA 2007); Liberty Mut. Fire Ins. Co. v. Bennett, 939 So.2d 1113, 1114 (Fla. 4th DCA 2006); XL Specialty Ins. Co. v. Aircraft Holdings, LLC, 929 So.2d 578, 583 (Fla. 1st DCA 2006); see also Coulter v. State Farm Mut. Auto. Ins. Co., No. 4:12cv577-WS/CAS, 2013 WL 6511560 (N.D.Fla. May 9, 2013); Trujillo v. USAA Cas. Ins. Co., No. 11-80320-CIV, 2012 WL 3516511 (S.D.Fla. Aug. 14, 2012).
In Genovese v. Provident Life & Accident Insurance Co., 74 So.3d 1064 (Fla.2011), a first-party bad faith case, the Florida Supreme Court considered whether Ruiz also allowed discovery of attorney-client privileged communications in the same circumstances. Genovese determined that, based on the differences between the work product doctrine and the attorney-client privilege and the justification for permitting the discovery of work product in the bad faith context, attorney-client communications were not discoverable. Specifically, the supreme court reasoned:
[T]he attorney-client privilege, unlike the work-product doctrine, is not concerned with the litigation needs of the opposing party. See Quarles & Brady, LLP v. Birdsall, 802 So.2d 1205, 1206 (Fla. 2d DCA 2002) (“[U]ndue hardship is not an exception, nor is disclosure permitted because the opposing party claims that the privileged information is necessary to prove their case.”) (citation omitted); see also West Bend Mutual Ins. Co. v. Higgins, 9 So.3d 655, 658 (Fla. 5th DCA 2009). Instead, the purpose of the privilege is to “encourage full and frank communication” between *145 the attorney and the client. Id. at 657 (quoting Am. Tobacco v. State, 697 So.2d 1249, 1252 (Fla. 4th DCA 1997)). This significant goal of the privilege would be severely hampered if an insurer were aware that its communications with its attorney, which were not intended to be disclosed, could be revealed upon request by the insured. Moreover, we note that there is no exception provided under section 90.502 that allows the discovery of attorney-client privileged communications where the requesting party has demonstrated need and undue hardship.
Therefore, although we held in Ruiz that attorney work product in first-party bad faith actions was discoverable, this holding does not extend to attorney-client privileged communications. Consequently, when an insured party brings a bad faith claim against its insurer, the insured may not discover those privileged communications that occurred between the insurer and its counsel during the underlying action.
Although we conclude that the attorney-client privilege applies, we recognize that cases may arise where an insurer has hired an attorney to both investigate the underlying claim and render legal advice. Thus, the materials requested by the opposing party may implicate both the work product doctrine and the attorney-client privilege. Where a claim of privilege is asserted, the trial court should conduct an in-camera inspection to determine whether the sought-after materials are truly protected by the attorney-client privilege. If the trial court determines that the investigation performed by the attorney resulted in the preparation of materials that are required to be disclosed pursuant to Ruiz and did not involve the rendering of legal advice, then that material is discoverable.
Moreover, our opinion in this case is not intended to undermine any statutory or judicially created waiver or exception to the privilege. Specifically, we note that under the “at issue” doctrine, the discovery of attorney-client privileged communications between an insurer and its counsel is permitted where the insurer raises the advice of its counsel as a defense in the action and the communication is necessary to establish the defense. See Coates v. Akerman, Senter-fitt & Eidson, P.A., 940 So.2d 504, 510 (Fla. 2d DCA 2006); see also Savino v. Luciano, 92 So.2d 817, 819 (Fla.1957) (“[W]hen a party has filed a claim, based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence, we think that he has waived his right to insist, in pretrial discovery proceedings, that the matter is privileged.”). Thus, we acknowledge that the attorney-client privilege may also be overcome in first-party bad faith actions in limited circumstances, although we emphasize that attorney-client privileged communications are not the discoverable materials discussed by our opinion in Ruiz.
Id. at 1068-69.
As the supreme court limited its holding in Genovese to the certified question it addressed, a question remains, at least in this district, regarding the effect of that holding on discovery requests in third-party bad faith proceedings involving the attorney-client privilege as presented here. Somewhat presciently, prior to the supreme court’s decision in Genovese, the second district examined a closely-related issue in Scoma, 975 So.2d 461. There, the personal representative of the deceased victim filed a third-party bad faith action against the insurer based on the insurer’s purported bad faith in failing to settle the *146 insurance claim made against its insured. The insured did not assign any bad faith claim that he might have had against the insurer to the personal representative. Id. at 463-64. Still, arguing that she stood in the shoes of the insured for purposes of the third-party bad faith action, the personal representative sought discovery of all documents in the possession of the insurer, Progressive, related to the initial claim. She further contended that the attorney-client privilege did not apply to any confidential communications between the insured, Progressive, and their respective counsel in the underlying tort litigation. Id. at 464.
The trial court, relying on this Court’s holding in Dunn and the third district’s holding in Aqua Jet, concluded that the attorney-client privilege did not protect confidential communications made by the insurer and the insured with their counsel during the underlying tort suit from discovery. On certiorari review, the second district quashed the order, holding that communications between the insurer and its counsel were protected by the attorney-client privilege. Id. at 465, 467. The court explained that:
There are two separate claims of attorney-client privilege at issue. First, [the insurer] seeks to protect its confidential communications with its counsel regarding [the personal representative]’s wrongful death suit. Second, [the insurer] seeks to protect [the insured]’s confidential communications with the attorney who represented him in the wrongful death suit. From our limited record, it appears that there is only one attorney who may have had confidential communications with both [the insurer] and [the insured]. It is at least possible, however, that [the insurer] may have had individual counsel at some point during the wrongful death proceedings and may have had confidential communications with that counsel.
We conclude that any communications between [the insurer] and its personal counsel are clearly protected by the attorney-client privilege. Moreover, we conclude that although [the personal representative] may “stand in the shoes” of [the insured] for the purposes of standing to bring a bad faith action, that position does not permit her access to otherwise privileged communications between [the insured] and his counsel in the wrongful death action, at least in the absence of a waiver of the privilege by [the insured] or his written assignment of the bad faith claim. A person does not waive or otherwise lose an attorney-client privilege merely because a third party is authorized to file a lawsuit against the person’s insurance company.
Id. at 464-65.
Recently, in Maharaj v. GEICO Casualty Co., 289 F.R.D. 666 (S.D.Fla.2013), the United States District Court for the Southern District of Florida faced a similar issue when a plaintiff in a third-party bad faith action sought discovery of the insurer’s claim file and the insurer objected to the discovery based on the attorney-client privilege. The magistrate judge summarized the issue as follows:
The Florida Supreme Court in Genovese v. Provident Life & Accident Ins. Co., 74 So.3d 1064 (Fla.2011), held that attorney-client privileged communications are not discoverable in first-party bad faith actions. The instant case is a third-party bad faith action. In their supplemental memoranda, the parties disagree as to whether the Genovese decision applies in the third-party bad faith context as well. As there is no dispute that the case at hand is a third-party bad faith ease, this Court must determine whether the legal analysis in *147 Genovese should apply to the facts of this case.
Id. at 669. The magistrate judge then determined that Genovese applied, allowing attorney-client privilege in third-party bad faith actions, and explained:
Based on the Florida Supreme Court’s language in Ruiz and the rationale in Genovese, this Court determines that the holding in Genovese, which protects attorney-client privileged documents in an insurer’s claim file in a first-party bad faith action, should be equally applicable in a third-party bad faith action. The Court is cognizant of the fact that the express language of Genovese limits its holding to the first-party bad faith context, but the Court sees no reason why the legal analysis utilized in Ge-novese regarding the application of the attorney-client privilege to the insurer’s claims file would not be equally relevant in a third-party bad faith case. In fact, it would seem incongruous to uphold the attorney-client privilege in a first-party bad faith action and eviscerate it in a third-party bad faith action. The Florida Supreme Court itself diminished, if not eliminated, the distinction for discovery purposes between the two types of cases in Ruiz.
Additionally, in Justice Pariente’s specially concurring opinion in Genovese, in which Justices Lewis, Labarga, and Perry concurred, she cited the following language from the Ruiz opinion:
The insurers’ duties set forth in section 624.155 to act “fairly and honestly toward [their] insured and with due regard for her or his interests” imposes a statutory obligation in first-party claims that is identical to the common law duty of good faith imposed on insurers in third-party claims. This was the essence of our holding in Allstate Indemnity Co. v. Ruiz, 899 So.2d 1121 (Fla.2005), which recognized the critical role that discovery of the claims file played in bad faith claims and held that there should not be “artificial and disparate discovery rules between first- and third-party bad faith claims [sic].” Id. at 1129. “There simply is no basis upon which to distinguish between first- and third-party cases with regard to the rationale of the discoverability of the claim file type material.” Id.
Genovese, 74 So.3d 1064, 1069. Later in her special concurrence, Justice Par-iente also asserted, “[y]et, while we strived in Ruiz to level the playing field in the critical area of discovery between first- and third-party bad faith cases, we must acknowledge that we do not have the independent authority to abrogate the attorney-client privilege, even in the context of bad faith claims.” Id. at 1070. The special concurrence gives further weight to this Court’s determination that Genovese should apply in a third-party bad faith case so as to protect attorney-client privileged materials in an insurer’s claim file. Based on the above, the communications between the insured, Junie Telfort, and her counsel, Kubicki Draper, are clearly protected by the attorney-client privilege.
Id. at 670-71.[3]
The magistrate judge’s order in Maha-raj is a logical extension of the Florida Supreme Court’s determinations in Ruiz and Genovese, and the second district’s holding in Scoma. Thus, we believe that we should adopt the holdings of Scoma *148 and Maharaj and recede from Dunn to the extent it allows the unqualified discovery of attorney-client protected material.[4] The fact that Stalley may stand in Boozer’s shoes, or have an independent right to bring a bad faith action under section 627.155, does not mean that Boozer gave up her statutory attorney-client privilege, codified in section 90.502, Florida Statutes (2009). There is no indication that Stalley obtained an assignment from Boozer, and it is clear that their interests are adverse.[5]
Recognizing the uncertainty of the law in this important area, we certify the following question to the Florida Supreme Court:
DO THE DECISIONS IN ALLSTATE INDEMNITY CO. V. RUIZ, 899 So.2d 1121 (Fla.2005), AND GENOVESE V PROVIDENT LIFE & ACCIDENT INSURANCE CO., 74 So.3d 1064 (Fla. 2011), SHIELD ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS FROM DISCOVERY IN THIRD-PARTY BAD FAITH LITIGATION?
ORDER QUASHED; QUESTION CERTIFIED.
TORPY, C.J., SAWAYA, PALMER, LAWSON, EVANDER, COHEN, BERGER, WALLIS and LAMBERT, JJ. concur.

Id.

. Moreover, in Ruiz, the supreme court favorably cited this Court’s holding in Dunn (as well as it’s prior opinion in Jennings and the third district’s holdings in Gutierrez and Aqua Jet), for the principal that ’’discovery of the insurer’s underlying claim file type material is permitted over the objections of work product protection," 899 So.2d at 1126, and concluded that an insurer’s work product objection to discovery of the insurer’s claim file in a bad faith action "does not automatically operate to protect such documents from discovery,” id. at 1131. The court explained that
in connection with evaluating the obligation to process claims in good faith under section 624.155, all materials, including documents, memoranda, and letters, contained in the underlying claim and related litiga *144 tion file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced in a first-party bad faith action. Further, all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection.
Id. at 1129-30.

. In West Bend, the insured was attempting to obtain attorney-client material from the insurer’s own attorney, not the attorney retained by the insurer to represent the insured.

. The district court adopted the magistrate judge’s order in Maharaj in an unreported order. See Maharaj v. GEICO Cas. Co., No. 12-80582-CIV, 2013 WL 1934075 (S.D.Fla. Apr. 5, 2013).

. In 1998, the Supreme Court of Appeals of West Virginia expressly disagreed with this Court’s holding in Dunn. See State ex rel. Allstate Ins. Co. v. Gaughan, 203 W.Va. 358, 508 S.E.2d 75, 88 (1998). Referring to this Court’s position in Dunn as the "minority view," the court in Gaughan stated as follows:
We do not hesitate in rejecting the minority approach to the issue of whether an insurer has standing to invoke the attorney-client privilege and work product rule in an attempt to prevent disclosure of the contents of an insured’s file in a third-party bad faith action. The minority position is unsound. It seriously undermines the relationship between an insured and insurer. By overemphasizing a party’s right to obtain disclosure of evidence to prove a third party claim of bad faith, the minority neglects the importance of "full and frank consultation between a client and a legal advisor [without] the fear of compelled disclosure of information.” State ex rel. USF & G v. Canady, 194 W.Va. [431] 438, 460 S.E.2d [677,] 684 [(W.Va. 1995)].

. Communications solely between Allstate and its separate counsel do not appear to be at issue here and would not be discoverable. Scoma, 975 So.2d at 467; West Bend, 9 So.3d at 658. Neither can we determine from the limited record before us if Wright represented solely Boozer or Boozer and Allstate or shared confidential information with Allstate in which event the "common interests” or "pooled information” exception to the waiver doctrine would need to be considered. See, e.g., MapleWood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550, 594 (S.D.Fla. 2013); Cone v. Culverhouse, 687 So.2d 888 (Fla. 2d DCA 1997); Visual Scene, Inc. v. Pilldngton Bros, pic., 508 So.2d 437 (Fla. 3d DCA 1987).