# Third District Court of Appeal

## State of Florida

Opinion filed February 18, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-1964
Lower Tribunal No. 22-22728 -CA-01
_____

**The Chetrit Group, LLC, et al.,**
Petitioners,

vs.

**EquiShares, Inc.,**
Respondent.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Valerie R. Manno Schurr, Judge.

Cole, Scott & Kissane, P.A., and Scott A. Cole and Francesca M. Stein, for petitioners.

Kozyak Tropin & Throckmorton LLP, and Benjamin J. Widlanski, Jorge L. Piedra, Robert J. Neary, Katherine A. Mitchell and Chaveli Claver Guzman, for respondent.

Before SCALES, C.J., and LINDSEY and GOODEN, JJ.

SCALES, C.J.

In this commercial dispute involving the formation of a joint venture, petitioners, defendants below, The Chetrit Group, LLC, Hollywood Horizons, LLC, Hollywood Horizons Owner LLC, and Joseph Chetrit (collectively "Chetrit") seek certiorari review of a September 10, 2025 discovery order. The discovery order compels Chetrit to produce certain communications between Chetrit and attorney Oren Lieber and the law firm of Ritter, Zaretsky, Lieber & Jaime (together "Lieber") to respondent, plaintiff below, EquiShares, Inc. ("EquiShares"). In its comprehensive, twenty-six page order, the trial court found that Lieber jointly represented Chetrit and EquiShares throughout the formation of the parties' joint venture and that the subject communications were relevant to a matter of the parties' common interest. Because these factual determinations are supported by competent, substantial evidence, the trial court did not depart from the essential requirements of law in finding that the statutory "common interest" exception to the attorney-client privilege applied to these communications. See § 90.502(4)(e), Fla. Stat. (2024); Transmark, U.S.A., Inc. v. State, Dep't of Ins., 631 So. 2d 1112, 1117 (Fla. 1st DCA 1994). We therefore deny the petition.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND[1]

---

[1] The facts set forth herein are taken from EquiShares's operative Amended Complaint and the limited record contained in Chetrit's appendix.

In early 2019, Chetrit and EquiShares entered into a joint venture to purchase and redevelop a resort property located in Hollywood Beach, Florida (the "Project"). EquiShares allegedly entered the joint venture with the understanding that, in return for EquiShares providing its labor and expertise to the Project, Chetrit would give EquiShares an equity stake in the Project. EquiShares alleges that its equity stake was supposed to be memorialized in a written partnership agreement akin to the partnership agreements employed by the parties in prior ventures. But no formalized partnership agreement was ever reached, and Chetrit allegedly squeezed EquiShares out of the Project.

The instant litigation results from the parties' failure to execute a written partnership agreement for the Project. EquiShares's operative Amended Complaint alleges various claims against Chetrit, seeking, in part, an equity share in the Project. Further, EquiShares alleges that Chetrit and Lieber orchestrated a fraud upon EquiShares by "repeatedly telling [EquiShares] that the partnership agreement would be reduced to writing." But after EquiShares "expend[ed] countless hours over multiple years to make the project viable," Chetrit and Lieber "shut EquiShares out of the Project and co-opted it for their own personal gain."

During discovery, EquiShares requested the production of communications between Chetrit and Lieber concerning the parties' attempts to formalize a written partnership agreement for the Project. Chetrit objected to EquiShares's production request, claiming that the communications were protected by the attorney-client privilege because Lieber had represented Chetrit *exclusively* for the Project.[2] Claiming that EquiShares and Chetrit had been Lieber's co-clients from the inception of the Project, EquiShares argued that the communications were not privileged as to EquiShares based on the statutory "common interest" exception to the privilege.[3]

On August 25, 2025, the trial court held a six-hour evidentiary hearing on Chetrit's privilege assertion. On September 10, 2025, the trial court entered the challenged discovery order, concluding that the "common

---

[2] See § 90.502(2), Fla. Stat. (2024) ("A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.").

[3] See § 90.502(4)(e), Fla. Stat. (2024) ("There is no lawyer-client privilege under this section when . . . [a] communication is relevant to a matter of common interest between two or more clients, or their successors in interest, if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients or their successors in interest.").

4

interest" exception to the attorney-client privilege applies to the subject communications. Specifically, the trial court found that (1) the communications were relevant to a matter of common interest (the Project), and (2) the communications were made to or from a lawyer (Lieber) who had been retained by Chetrit and EquiShares in common to provide legal advice with respect to the Project. Chetrit timely petitioned this Court for a writ of certiorari, seeking to quash the challenged discovery order.

## II.    CERTIORARI JURISDICTION AND STANDARD OF REVIEW

Because discovery orders compelling the production of communications claimed to be protected by the attorney-client privilege generally cause material harm for which this is no remedy on appeal, such orders are reviewed by certiorari to determine whether they depart from the essential requirements of law. See Snyder v. Value Rent-A-Car, 736 So. 2d 780, 781 (Fla. 4th DCA 1999). Because section 90.502(4)(e) of the Florida Statutes expressly exempts "common interest" communications from the attorney-client privilege, our inquiry is whether the trial court's factual findings underpinning its conclusion that the exception applies are supported by competent, substantial evidence. See Transmark, 631 So. 2d at 1117.

## III.    ANALYSIS

5

As a threshold matter, we are mindful that there is likely no privilege more foundational than the attorney-client privilege. See West Bend Mut. Ins. Co. v. Higgins, 9 So. 3d 655, 657 (Fla. 5th DCA 2009) (observing that the "attorney-client privilege is the oldest confidential communication privilege known in the common law and is now codified by statute and contained in the Evidence Code"). The attorney-client privilege is indeed essential to the administration of justice. Id. (recognizing the privilege "is an interest traditionally deemed worthy of maximum legal protection"). The privilege, though, is a statutory one and the Legislature has set forth very limited exceptions, including the "common interest" exception. This exception to the attorney-client privilege "requires trial courts to examine communications involving a distinct 'matter' to determine whether the clients in that matter had such common interests that objectively the client involved in the communications lacked a reasonable basis to preserve the confidentiality of the communications from the other client." See Cone v. Culverhouse, 687 So. 2d 888, 889 (Fla. 2d DCA 1997).

In this petition, unlike below, Chetrit seemingly concedes that competent, substantial evidence supports the trial court's determination that the parties jointly retained and consulted Lieber with respect to the Project

as a whole.[4] Nevertheless, Chetrit claims that Chetrit's private communications with Lieber concerning the parties' failed attempts to formalize a written partnership agreement are privileged because of the parties' competing interests as to the terms of the agreement. According to Chetrit, while the parties may have shared a common interest as to some aspects of the Project, as to the subject communications "the parties' interests were not sufficiently compatible that an objectively reasonable client would expect such communications to be accessible to the other party." The record before the trial court belies this assertion.

In the challenged discovery order, the trial court found that the scope of Lieber's dual representation of the parties included Lieber providing legal advice to *both* Chetrit and EquiShares about the terms of the partnership agreement that the parties were then trying to reduce to writing. The trial court also found that, for nearly two years, the parties' interests were aligned and that they both consulted regularly with Leiber. These findings are supported by the testimony of Matt Press (EquiShares's principal) at the evidentiary hearing and the exhibits EquiShares submitted at the hearing.

---

[4] The record reflects that Lieber did not have an engagement letter or retainer agreement with either party.

Contrary to Chetrit's suggestion, the "common interest" exception may apply even where the co-clients have interests that are adverse to one another. Id. at 893 (recognizing that "'common interests' can exist, even if some conflict is present or stands between the clients"); Hamilton v. Hamilton Steel Corp., 409 So. 2d 1111, 1113-14 (Fla. 4th DCA 1982) ("It seems abundantly clear that this communication was of common, even if adverse, interest between two or more clients and was made by some (viz. any) of them to a lawyer jointly retained or consulted.").

Because there is competent, substantial evidence to support the trial court's factual findings that Lieber represented the parties jointly and that the subject communications were relevant to a matter of common interest, the trial court did not depart from the essential requirements of law in concluding that the statutory "common interest" exception to the attorney-client privilege applied to the subject communications. See Transmark, 631 So. 2d at 1117.

Petition denied.